## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF THE DEAF
8630 Fenton Street, Suite 820
Silver Spring, MD 20910,

CARLTON STRAIL
c/o National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910

GRAHAM FORSEY
c/o National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910

DEBRA FLEETWOOD
c/o National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910,

JOHN RIVERA, JR.
c/o National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910,

COREY AXELROD
c/o National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910,

Civil Action No. 20-cv-2107

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States,
1600 Pennsylvania Avenue NW
Washington, DC 20500,

EXECUTIVE OFFICE OF THE PRESIDENT
1600 Pennsylvania Avenue NW
Washington, DC 20500,

THE WHITE HOUSE OFFICE
1600 Pennsylvania Avenue NW
Washington, DC 20500,

OFFICE OF THE VICE PRESIDENT
1600 Pennsylvania Avenue NW
Washington, DC 20500,

KAYLEIGH MCENANY,
in her official capacity as Press Secretary
to the President of the United States,
1600 Pennsylvania Avenue NW
Washington, D.C. 20500;

*Defendants*.

## COMPLAINT

1.     This is an action to ensure that hundreds of thousands of deaf and hard of hearing

("DHH") Americans have access to critical, potentially life-saving information conveyed by our

nation's political and public health leaders during the COVID-19 pandemic.

2.     All 50 states' governors have provided in-frame American Sign Language

("ASL") interpretation during public briefings regarding the pandemic, and all but a small

handful continue to do so consistently.  So have many mayors of America's largest cities.

Leaders from around the world have also provided sign language interpretation for public

briefings during the pandemic.  This is done in recognition of the importance of meaningful

access to up-to-date information regarding the crisis for DHH people.

3.     President Trump, however, does not.  He now stands alone in holding televised

briefings regarding the COVID-19 pandemic without ever having provided any ASL

interpretation.  This means that not only are DHH Americans being denied the opportunity to

understand any communication from the President of the United States during this critical time,

they are also being denied the opportunity to access information, analysis, and updates from Dr. Anthony Fauci and Dr. Deborah Birx—two renowned public health experts.

4.     With COVID-19 cases spiking in many states across the country, it is more important than ever that all Americans have access to up to date, public health information in the coming months.

5.     Various organizations and entities, including the National Association for the Deaf ("NAD"), have requested that the White House provide ASL interpretation during its public COVID-19 related briefings.  *See* Ex. C.  Additionally, 34 United States Senators have requested the same.  *See* Ex. A, Letter to Vice President Mike Pence, the White House (Mar. 12, 2020). The White House has ignored these requests and continues to conduct briefings without any ASL interpretation.

6.     The White House's failure to provide ASL interpreters during COVID-19 related briefings, including press briefings, is against the law.  Federal law unequivocally prohibits discrimination against individuals with disabilities, which includes failing to provide meaningful access to public benefits, programs, or services.  As the U.S. District Court for the Southern District of New York recently held, government officials are required to provide in-frame ASL interpreters during public briefings regarding the COVID-19 pandemic.  *See Martinez v. Cuomo*, No. 20-CV-3338 (VEC), 2020 WL 2393285, at *5–7 (S.D.N.Y. May 12, 2020).  As the court explained, "[w]ithout immediate implementation of an in-frame ASL interpreter, Plaintiffs and other similarly situated deaf New Yorkers will continue to be denied timely access to critical information, leaving them less able to comply with current orders and advice, less able to prepare for the future, and more anxious about current conditions and the future."  *Id.* at *6.

7.     Plaintiffs therefore bring this action to vindicate their right to meaningful access to the information conveyed at public White House briefings regarding the COVID-19 pandemic.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

9.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

10.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (e). Defendants reside in the District of Columbia.  Further, a substantial part of Defendants' unlawful acts giving rise to their claims occurred in this district.

## PARTIES

11.    Plaintiff the National Association of the Deaf (NAD) is the nation's premier civil rights organization of, by, and for deaf and hard of hearing individuals in the United States. Established in 1880 by deaf and hard of hearing leaders, the NAD is dedicated to its mission of preserving, protecting, and promoting the civil, human, and linguistic rights for 48 million deaf and hard of hearing people in this country.  The NAD has associational standing to sue on behalf of its deaf and hard of hearing members because (i) the NAD's members have standing to sue in their own right, (ii) advocating on behalf of its members on this issue is germane to the NAD's mission of advocating for its members' civil, human, and linguistic rights, and (iii) none of the NAD's members is required to participate in this action because the NAD is seeking declaratory and injunctive relief and not an individualized remedy for its members.

12.    Plaintiff Carlton Strail is a 92-year-old deaf resident of Syracuse, New York.  Mr. Strail is fluent in ASL, and it is his preferred and primary language.  Mr. Strail never attended

college and has difficulty understanding rapid and unreliable live captioning on television, especially when the content is complex such as when there is information about a health pandemic. Mr. Strail, who is retired, does not own a computer and receives news from television. Mr. Strail watched a number of the White House briefings during March and April of 2020, and saw the briefings against in July of 2020, but he cannot understand them because there is no ASL interpreter during the briefings. Mr. Strail wants to understand the White House briefings because he wants information on how to stay safe during the coronavirus pandemic, as well as how to take care of family, friends, and loved ones. He also wants information about other pandemic-related issues, such as the progress in developing a potential vaccine and the impact of the pandemic on the economy and country as a whole.

13.     Plaintiff Graham Forsey is a 27-year-old deaf resident of Washington, D.C. He is a graduate of the Ernest C. Drury School for the Deaf in Milton, Canada. ASL is Mr. Forsey's preferred and primary language. Mr. Forsey watched a number of the White House briefings during March and April of 2020, and saw the briefings again in July of 2020, but he cannot understand them because there is no ASL interpreter during the briefings. Mr. Forsey has attempted to understand the White House briefings on television, on the internet, and on social media, but is often unable to do so because there is no ASL interpreter and the captioning is often inaccurate on television or not available on the internet or social media. Mr. Forsey wants to understand the White House briefings because he wants information on how to stay safe during the coronavirus pandemic, as well as how to take care of family, friends, and loved ones. He also wants information about other pandemic-related issues, such as the progress in developing a potential vaccine and the impact of the pandemic on the economy and country as a whole. In addition, Mr. Forsey is President of the District of Columbia Association of the Deaf,

but is unable to answer questions from members of the association about the White House briefings because he does not have access to the information himself.

14.     Plaintiff Debra Fleetwood is a 68-year-old deaf resident of Plainfield, New Jersey. Growing up, Ms. Fleetwood attended the New Jersey School for the Deaf.  Ms. Fleetwood is fluent in ASL, and it is her preferred and primary language.  Ms. Fleetwood never attended college and is not able to understand captioning on television when the content is complex such as when there is information about a health pandemic.  Ms. Fleetwood, who is retired, gets most of her news information from television.  Ms. Fleetwood watched a number of the White House briefings during March and April of 2020, and saw the briefings again in July of 2020, but she cannot understand them because there is no ASL interpreter during any of those briefings.  Ms. Fleetwood wants to understand the White House briefings because she wants information on how to stay safe during the coronavirus pandemic, as well as how to take care of family, friends, and loved ones.  She also wants information about other pandemic-related issues, such as the progress in developing a potential vaccine and the impact of the pandemic on the economy and country as a whole.

15.     Plaintiff John Rivera, Jr. is a 66-year-old deaf resident of Old Bridge, New Jersey. Growing up, Mr. Rivera attended Public School 47, a deaf school in New York City.  Mr. Rivera is fluent in ASL, and it is his preferred and primary language.  Mr. Rivera has an Associate of Applied Science (A.A.S.) degree from the National Technical Institute of the Deaf (NTID) in Data Processing and has been employed in data processing since 1982.  Mr. Rivera, who gets most of his news information from television, is not able to understand captioning on television when the content is complex such as when there is information about a health pandemic.  Mr. Rivera watched a number of the White House's briefings during March and April of 2020, and

6

saw the briefings again in July of 2020, but he cannot understand them because there is no ASL interpreter during any of those briefings.  Mr. Rivera wants to understand the White House briefings because he wants information on how to stay safe during the coronavirus pandemic, as well as how to take care of family, friends, and loved ones.  He also wants information about other pandemic-related issues, such as the progress in developing a potential vaccine and the impact of the pandemic on the economy and country as a whole.

16.     Plaintiff Corey Axelrod is a 34-year-old deaf resident of Arlington Heights, Illinois.  A fourth-generation deaf person, Mr. Axelrod's first language is ASL, and it is his preferred and primary language.  Mr. Axelrod watched a number of the White House briefings during March and April of 2020, and saw the briefings again in July of 2020, but he cannot understand them because there is no ASL interpreter during any of those briefings.  Mr. Axelrod has attempted to understand the White House briefings on television, on the Internet, and on social media, but is often unable to do so because there is no ASL interpreter and the captioning is often delayed and inaccurate on television or not available on the Internet or social media.  Mr. Axelrod wants to understand the White House briefings because he wants information on how to stay safe during the coronavirus pandemic, as well as how to take care of family, friends, and loved ones.  He also wants information about other pandemic-related issues, such as the progress in developing a potential vaccine and the impact of the pandemic on the economy and country as a whole.  In addition, Mr. Axelrod is President of the Illinois Association of the Deaf, but is unable to answer questions from members of the association about the White House briefings because he does not have access to the information himself.

17.     Defendant Donald J. Trump is the President of the United States.  He is sued in his official capacity.

18.     Defendant the Executive Office of the President (EOP) "provide[s] the President with the support needed to govern effectively" and has responsibility for, among other things, "communicating the President's message to the American people."  The Administration, https://www.whitehouse.gov/the-trump-administration.

19.     Defendant the White House Office is an agency within the EOP and has responsibility for, among other things, the White House's press briefings.

20.     Defendant Office of the Vice President is an agency within the EOP that supports Vice President Mike Pence in his executive and legislative duties.  Vice President Pence is the Chair of the White House Coronavirus Task Force and has held public briefings concerning the COVID-19 pandemic.

21.     Defendant Kayleigh McEnany is Press Secretary to the President of the United States.  She is sued in her official capacity.  As Press Secretary, Ms. McEnany holds regular press briefings, including briefings concerning the COVID-19 pandemic.

## FACTUAL ALLEGATIONS

### Deafness and American Sign Language

22.     There are at least 48 million DHH persons in the United States. [1]  For many of these DHH individuals, ASL is their primary language, and for many such persons, English is, at best, a second language.  Indeed, many DHH persons know virtually no English.

23.     Most DHH Americans who use ASL require qualified ASL interpreters to communicate with hearing persons who can only communicate in a spoken language such as English.

---

[1]     Here, Plaintiffs use the term DHH to refer to individuals with hearing levels or hearing loss that qualify as disabilities under the Rehabilitation Act.  Plaintiffs use the term "Deaf" to refer to individuals who self-identify as culturally deaf.

24.     ASL is a complete and complex language distinct from English, with its own vocabulary and rules for grammar and syntax—it is not simply English in hand signals.  ASL has no written component.  For several reasons, including early language deprivation, many deaf people have a very limited ability to read and write in English.

25.     Written English is not an effective means of communication for the many deaf individuals who have limited English capabilities, particularly for complex and important topics such as COVID-19 and related issues of public health.

**The White House's Failure to Provide ASL Interpreters For COVID-19 Briefings**

26.     Beginning in March 2020, the White House began holding regular, televised briefings regarding the COVID-19 outbreak.  To date, the White House has conducted more than 50 televised COVID-19 briefings.  The White House Office, and in particular the Press Secretary, is responsible for the public communications of the White House, including the White House's COVID-19 related public briefings.  *See* John P. Burke, *Administration of the White House*, Miller Ctr. of Pub. Affairs, Univ. of Va., https://tinyurl.com/ydy5cq52 (Nov. 27, 2010).

27.     Defendants' COVID-19 briefings have at times involved only President Trump, President Trump along with members of the White House Coronavirus Task Force, and Vice President Pence without President Trump.  Further, such COVID-19 briefings have sometimes been held at venues other than the White House itself, including at the U.S. Department of Health and Human Services, but they have always been organized and conducted by Defendants.

28.     All of the major news networks have broadcasted the White House briefings to a live national audience.

29.     The briefings have addressed critical issues regarding the health crisis, including the number of confirmed COVID-19 cases, the availability of testing, information about social

distancing and other personal safety measures, the coordination of local, state, and federal

emergency response systems, and other information about how Americans can stay safe and help

limit the spread of the virus.

30.     The briefings have also at times featured government officials from the White

House Coronavirus Task Force, including public health experts Dr. Anthony Fauci, the director

of the National Institute of Allergy and Disease, and Dr. Deborah Birx, the coordinator of the

United States Government Activities to Combat HIV/AIDS.  For example, on June 26, 2020, the

White House Coronavirus Task Force held a televised briefing in response to the recent increase

in coronavirus cases across the United States.  During the briefing, the Task Force members

delivered important information to the American public.  After Dr. Birx "unpack[ed] the specific

outbreaks in Texas, Florida, Arizona, and California," Vice President Pence spoke, "about what

every American can do to play their part in reducing the spread and the impacts of the

coronavirus pandemic."  In addition, Dr. Fauci implored young Americans to recognize that they

are "part of a process" and have a "societal responsibility" to comply with social distancing

requirements, in light of the alarming number of growing cases.  But hundreds of thousands of

DHH Americans were unable to receive this important information due to the lack of ASL

interpreters.

31.     On July 20, 2020, President Trump announced plans to revive his administration's

COVID-19 briefings.  Since then, the President has given regular briefings at the White House,

providing updates on COVID-19 economic relief packages, vaccine development, and outbreaks

across the country.  On several occasions he has asked Americans to wear masks and socially

distance.  Although health experts are not present at the briefings, President Trump has stated

that he is relaying information from both Dr. Birx and Dr. Fauci to the public.

32.     All 50 states' Governors have provided televised COVID-19 briefings with in-frame ASL interpretation, and all but a small handful continue to do so consistently.

33.     Mayors from some of America's largest cities have also provided televised COVID-19 briefings, and have likewise provided in-frame ASL interpretation for those briefings.

34.     Many of these leaders have provided in-frame ASL interpretation during these briefings by using teams of hearing interpreters and Certified Deaf Interpreters ("CDIs") who are themselves deaf or hard of hearing and have specialized training and skill in communicating complex concepts to other DHH persons.

35.     Many other countries, including Argentina, Australia, Austria, Belgium, Bulgaria, Canada, China, Columbia, Costa Rica, Croatia, Cyprus, Czech Republic, Denmark, Estonia, Fiji, Finland, France, Germany, Greece, Grenada, Hungary, Iceland, Ireland, Italy, Jamaica, Latvia, Lithuania, Luxembourg, Madagascar, Malta, Mongolia, Mozambique, Netherlands, New Zealand, Norway, Papua New Guinea, Paraguay, Poland, Portugal, Romania, Samoa, Saudi Arabia, Slovakia, Slovenia, Solomon Islands, South Korea, Spain, Sweden, Switzerland, Taiwan, Thailand, Trinidad and Tobago, and Uruguay also have used on-screen native sign language interpreters during televised COVID-19 news conferences with top public officials.

36.     In the past, U.S. federal agencies, including the Federal Emergency Management Agency (FEMA) before and in the aftermath of Hurricanes Irma and Harvey, have used onscreen ASL interpreters during televised briefings.

37.     Providing ASL interpretation for public briefings is not unduly expensive or burdensome.

38.     On March 12, 2020, 34 United States Senators wrote to Vice President Mike Pence, copying Dr. Birx, urging the Administration to ensure that all Americans, including those with disabilities have meaningful access to information about COVID-19.  *See* Ex. A.  In that letter, the Senators stated that "the President and his Cabinet officials can be models of accessibility by having American Sign Language (ASL) interpreters at every news conference about COVID-19," noting that it "guarantees that members of the deaf and hard of hearing community are able to receive information in real time."  *Id.*  On information and belief, the White House did not respond to this letter.

39.     On March 18, 2020, the National Council on Disability, a federal agency, requested that President Trump and the White House provide in-frame ASL interpretation of all his COVID-19 briefings.  *See* Ex. B.  The White House did not respond to this letter.

40.     That same day, the NAD also wrote to Stephanie Grisham, the White House Director of Communications, requesting that President Trump and the White House provide in-frame ASL interpretation of all his COVID-19 briefings.  *See* Ex. C, Letter from Howard Rosenblum, Chief Executive Officer, NAD, to Stephanie Grisham, Director of Communications, The White House (Mar. 18, 2020).  The White House did not respond to this letter.

41.     On March 27, 2020, the Linguistic Society of America (LSA)—an organization founded in 1924 to advance the scientific study of language—sent a letter to the White House Press Staff, requesting that all White House press briefings addressing COVID-19 include an ASL interpreter who is visible to any viewer.  *See* LINGUISTIC SOCIETY OF AMERICA, https://www.linguisticsociety.org/about (last visited Aug. 2, 2020).  The LSA explained that "solely relying on closed-captioning is not an option for all ASL users, and that a certified sign language interpreter (who must remain visible during the entirety of each briefing) is

necessary. . . .  This is not only the right thing to do but is also required by federal law, pursuant to the Americans with Disabilities Act and the Rehabilitation Act of 1973."  Ex. D.

42.     On April 21, 2020, Senators Sherrod Brown and Robert P. Casey, Jr., as well as Congresswoman Donna Shalala, wrote to Vice President Pence, copying Dr. Birx, "to request that the White House Coronavirus Task Force use qualified, fully-visible American Sign Language (ASL) interpreters during public briefings on the coronavirus."  *See* Ex. E.  On information and belief, the White House did not respond to this letter.

43.     While the TV network broadcasters, pursuant to FCC mandate, provide closed captioning for their televised broadcasts of White House briefings, closed captioning is done in written English, which is inaccessible to deaf individuals who are fluent only in ASL.

44.     Tone is also often lost in written captions.  By contrast, an interpreter is able to convey tone and context of a message through facial expressions, sign choice, and demeanor.

45.     Further, the provision of live closed captioning frequently contains errors and omissions that make it difficult or impossible for DHH individuals to understand the information being provided in the briefings, particularly if they are not fluent in English.

46.     The NAD has received numerous complaints from DHH citizens who are unable to understand President Trumps' briefings due to the lack of in-frame televised ASL interpretation.[2]

---

[2]     "In frame" ASL interpretation refers to simultaneous sign language interpreting where the sign language interpreter is visible on screen beside the speaker.  This may be accomplished by placing the interpreter physically near the speaker, or by superimposing a live video feed of the interpreter into a frame that appears alongside the speaker, with the frame sized appropriately to allow DHH viewers to see and understand the interpretation.  Under either approach, the in frame, on screen interpreter would be visible on televised broadcast and on streamed mobile devices.

47.     While the number of COVID-19 cases are currently declining in some of the early

hardest hit states such as New York and New Jersey, 32 states reported record increases in

COVID-19 cases in July.  By late July, the number of COVID-19 cases nationwide surged past

four and a half million.

48.     All estimates show that the virus will continue to affect the country throughout

the remainder of 2020, and possibly beyond.  Thus, it remains as important as ever that all

Americans have access to timely information from the White House.

**COUNT ONE**
**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**
**(Declaratory and Injunctive Relief against Defendants EOP, the White House Office, and
the Office of the Vice President)**

49.     Plaintiffs incorporate by reference each and every allegation contained in the

foregoing paragraphs as if specifically alleged herein.

50.     Section 504 of the Rehabilitation Act provides in pertinent part that "no otherwise

qualified individual with a disability in the United States . . . shall, solely by reason of his or her

disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any . . . program or activity conducted by any Executive agency . . . ."  29

U.S.C. § 794(a).

51.     Defendants EOP, The White House Office, and Office of the Vice President are

"Executive agencies" within the meaning of 29 U.S.C. § 794(a).  *See* 29 U.S.C. § 794(a)

(directing heads of agencies to promulgate regulations necessary to carry out the Rehabilitation

Act); Enforcement of Nondiscrimination on the Basis of Handicap in Federally Conducted

Programs, 53 Fed. Reg. 25,872, 25,872 (July 8, 1988) (final rule requiring Federal Executive

Agencies, including the Executive Office of the President, to operate all programs and services to

14

ensure nondiscrimination against qualified individuals with disabilities); 3 C.F.R. Part 102

(codifying regulations); 7 Op. O.L.C. 110, 110, 114 (1983) ("The term 'Executive agency' as

used in [§] 504 must be construed broadly to include all government entities which are not within

either the legislative or judicial branches."); *see also* 29 U.S.C. § 794(a); 3 C.F.R. § 102.103

(defining White House Office and Office of the Vice President as "agenc[ies]" for purposes of

EOP regulations implementing Rehabilitation Act).

52.     Public briefings conducted by the Executive Office of the President, the White

House Office, and the Office of the Vice President are all federally conducted programs or

activities subject to Section 504 of the Rehabilitation Act.

53.     A disability is defined as "a physical or mental impairment that substantially

limits one or more major life activities of such individual."  29 U.S.C. § 705(9)(B) (citing 42

U.S.C. § 12102(1)(A)).

54.     Deafness is a disability pursuant to 29 U.S.C. § 705(21)(A)(iii), and is a physical

impairment that substantially limits the major life activities of hearing.

55.     Plaintiffs, who are deaf, are qualified individuals with a disability within the

meaning of Section 504.

56.     Defendants' practice of denying access to ASL interpretation violates Section 504

by authorizing, or failing to forbid, actions that:

      a.  Exclude from participation in, deny the benefits of, or otherwise subject

          individuals to discrimination under a program or activity conducted by an

          Executive Agency on the basis of disability (or "handicap").  29 U.S.C. § 794(a);

          3 C.F.R. § 102.130(a); § 103.149.

b. Deny qualified individuals with disabilities (or "handicaps") the opportunity to participate in or benefit from the aid, benefit, or service. 3 C.F.R. § 103.130(b)(1)(i); § 103.149.

c. Afford qualified individuals with disabilities (or "handicaps") an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded to others. *Id.* § 103.130(b)(1)(ii).

d. Provide a qualified individual with disabilities (or "handicaps") with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level achievement as that provided to others. *Id.* § 103.130(b)(1)(iii).

e. Provide different or separate aid, benefits, or services to individuals with handicaps or to any class of individuals with disabilities (or "handicaps") than is provided to others, where such action is not necessary to provide qualified individuals with disabilities (or "handicaps") with aid, benefits, or services that are as effective as those provide to others. *Id.* § 103.130(b)(1)(iv).

f. Otherwise limit a qualified individual with disabilities (or "handicaps") in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. *Id.* § 103.130(b)(1)(vi); § 103.149.

57. Defendants' practice of denying ASL interpretation further violates Section 504 by failing to comport with its own Communications requirements pursuant to 3 CFR § 102.160 to:

16

    a.   take appropriate steps to ensure effective communication with applicants, participants, personnel of other Federal entities, and members of the public. 3 CFR § 102.160(a).

    b.   furnish appropriate auxiliary aids where necessary to afford an individual with disabilities (or "handicaps") an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency. 3 CFR § 102.160(a)(1).

    c.   in determining what type of auxiliary aid is necessary, give primary consideration to the requests of the individual with disabilities (or "handicaps"). 3 CFR § 102.160(a)(1)(i).

58.    As a result of Defendants' acts and omissions, NAD's members and the Individual Plaintiffs are excluded from participation in, denied the opportunity to participate in or benefit from, and denied the full benefits of the White House's briefings.

**COUNT TWO**
**<u>Mandamus Relief</u>**
**(Declaratory and Injunctive Relief against all Defendants)**

59.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

60.    The Rehabilitation Act provides Plaintiffs with a clear right to relief—namely, to not be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency solely by reason of disability.

61.    Defendants have a clear duty to act—namely, to provide Plaintiffs with meaningful access to the public benefits, programs, and services that they administer.  As it

17

relates to White House's COVID-19 briefings, this duty entails an obligation to provide live televised in-frame ASL interpretation.  This duty is ministerial in nature.

62.     By failing to provide in-frame ASL interpretation, Defendants have violated their duties to Plaintiffs under the Rehabilitation Act.

63.     Thus, if the Court concludes that the Rehabilitation Act and First Amendment do not provide an adequate remedy to Plaintiffs, then there would be no other adequate remedy available to Plaintiffs, and Plaintiffs would be entitled to relief in the form of a writ of mandamus ordering Defendants to comply with the statutory duties imposed by the Rehabilitation Act.

**COUNT THREE**
**Violation of the First Amendment of the U.S. Constitution**
**(Declaratory and Injunctive Relief against all Defendants)**

64.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

65.     The First Amendment to the U.S. Constitution guarantees, among other things, "the freedom of speech."

66.     The Supreme Court has held that the protection afforded by the First Amendment "is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976).  Thus, where one enjoys a right to speak, others hold a "reciprocal right to receive" that speech, which "may be asserted" in court.  *Id.* at 757.

67.     Defendants' refusal to provide in-frame ASL interpretation prevents Plaintiffs from accessing the communications provided by their elected representatives.

68.     Denying this access serves no legitimate or compelling need and is not rationally related or narrowly tailored to serve any government interest.

18

69.     Providing such access would not impose an undue financial or administrative burden on Defendants.

70.     Accordingly, Defendants' refusal to provide in-frame ASL interpretation violates the First Amendment.

**COUNT FOUR**
**Nonstatutory Review**
**(Declaratory and Injunctive Relief against All Defendants)**

71.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

72.     By failing to provide in-frame ASL interpretation, Defendants have violated their duties to Plaintiffs under the Rehabilitation Act and acted ultra vires.

73.     Thus, if the Court concludes that the Rehabilitation Act and First Amendment does not provide an adequate remedy to Plaintiffs, the Court should award relief under the doctrine of nonstatutory review.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs requests that judgment be entered against Defendants and that the Court grant the following:

a.  Preliminary and thereafter permanent injunctive relief requiring Defendants to immediately begin providing live televised in-frame ASL interpretation at all public briefings conducted by any Defendant that address issues concerning COVID-19, including all such briefings involving President Trump, Vice President Pence, Press Secretary McEnany, or any members of the White House Coronavirus Task Force;

b.  Declaratory relief that Defendants have violated the Rehabilitation Act by failing to provide live televised in-frame ASL interpretation at all public briefings conducted by

19

Defendants that have addressed issues concerning COVID-19, including all such briefings involving President Trump, Vice President Pence, Press Secretary McEnany, or any members of the White House Coronavirus Task Force;;

c.   Declaratory relief that Defendants have violated the First Amendment by failing to provide live televised in-frame ASL interpretation at all public briefings conducted by Defendants that have addressed issues concerning COVID-19, including all such briefings involving President Trump, Vice President Pence, Press Secretary McEnany, or any members of the White House Coronavirus Task Force;

d.   Order all Defendants, in the form of mandamus relief and/or under the doctrine of nonstatutory review, to provide live televised in-frame ASL interpretation at all public briefings conducted by Defendants that address issues concerning COVID-19, including all such briefings involving President Trump, Vice President Pence, Press Secretary McEnany, or any members of the White House Coronavirus Task Force;

e.   Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of Section 504 of the Rehabilitation Act and the First Amendment;

f.   Award Plaintiffs reasonable attorneys' fees and costs; and

g.   Award such other relief as this Court deems just.

Dated: August 3, 2020

/s/ Ian S. Hoffman

Ian S. Hoffman (D.C. Bar No. 983419)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999
ian.hoffman@arnoldporter.com


/s/ Marc Charmatz

Marc Charmatz**
NAD Law and Advocacy Center
86 30 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Fax: (301) 587-1791
marc.charmatz@nad.org

**pro hac vice motion pending

Counsel for Plaintiffs