**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL ASSOCIATION OF THE DEAF, *et al.*,
                              *Plaintiffs*,

      v.

DONALD J. TRUMP, *et al.*,

               *Defendants*.

Civil Action No.  20-cv-2107

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    A.    The White House's COVID-19 Briefings ................................................. 3

    B.    Deaf Americans' Inability to Access the White House's COVID-19 Briefings ................................................................................................................... 5

    C.    Plaintiffs' Inability to Access the White House's COVID-19 Briefings ................ 8

ARGUMENT ...................................................................................................................... 10

I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ................................. 11

    A.    Plaintiffs Are Likely to Succeed on Their Rehabilitation Act Claim .................. 11

    B.    Alternatively, Plaintiffs Are Likely to Succeed on Their Claim for Mandamus ................................................................................................................ 15

II.    PLAINTIFFS ARE LIKELY TO SUFFFER IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS NOT GRANTED .................................................. 17

III.    THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF PLAINTIFFS .......................................................................................... 19

CONCLUSION .................................................................................................................. 20

REQUEST FOR EXPEDITED TREATMENT ................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) ...........................................................................10

*Alexander v. Choate*,
469 U.S. 287 (1985) .............................................................................................11

*Am. Council of Blind v. Paulson*,
463 F. Supp. 2d 51 (D.D.C. 2006) ........................................................................11

*Am. Council of Blind v. Paulson*,
525 F.3d 1256 (D.C. Cir. 2008) ...........................................................................12

*Brooklyn Center for Independence of the Disabled v. Bloomberg*,
980 F. Supp. 2d 588 (S.D.N.Y. 2013).................................................................14

*Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419, Bhd. of Painters
& Allied Trades, AFL-CIO v. Brown*,
656 F.2d 564 (10th Cir. 1981) ............................................................................16

*Davis v. Billington*,
76 F. Supp. 3d 59 (D.D.C. 2014) .................................................................10, 11

*Davis v. Pension Benefit Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) ...........................................................................10

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
266 F. Supp. 3d 297 (D.D.C. 2017) .....................................................................18

*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005) ...............................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)................................................................................................9

*Greater L.A. Council on Deafness, Inc. v. Baldrige*,
827 F.2d 1353 (9th Cir. 1987) .............................................................................16

*Henrietta D. Bloomberg*,
331 F.3d 261 (2d Cir. 2003)..................................................................................14

*In re Aiken Cty.*,
725 F.3d 255 (D.C. Cir. 2013) ..............................................................................16

iii

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
    736 F. Supp. 2d 24 (D.D.C. 2010) ........................................................16

*Kirwa v. U.S. Dep't of Def.*,
    285 F. Supp. 3d 21 (D.D.C. 2017) ........................................................17

*\*Martinez v. Cuomo*,
    No. 20-CV-3338, 2020 WL 2393285 (S.D.N.Y. May 12, 2020) ................... *passim*

*Payne Enters., Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) .............................................................19

*Pierce v. District of Columbia*,
    128 F. Supp. 3d 250 (D.D.C. 2015) ......................................................12

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) .............................................................10

*Traynor v. Turnage*,
    485 U.S. 535 (1988) .........................................................................11

*United Gov't Sec. Officers of Am., Local 52 v. Chertoff*,
    587 F. Supp. 2d 209 (D.D.C. 2008) ......................................................16

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................10

*Young v. D.C. Hous. Auth.*,
    31 F. Supp. 3d 90 (D.D.C. 2014) .........................................................12

## Statutes & Regulations

3 C.F.R. § 102.103 ..............................................................................12, 14

3 C.F.R. § 102.160(a) ......................................................................... *passim*

53 Fed. Reg. 25872 (July 8, 1988) ............................................................14

28 U.S.C. § 1361 .................................................................................15

29 U.S.C. § 701 ..................................................................................11

29 U.S.C. § 705 ..................................................................................12

29 U.S.C. § 794 ..................................................................................14

29 U.S.C. § 794 ...............................................................................2, 11

iv

**Other Authorities**

7 Op. O.L.C. 110 (1983) ................................................................................................................. 15

Jeremy W. Peters, Elaina Plott & Maggie Haberman, *260,000 Words, Full of Self-Praise From Trump on the Virus*, N.Y. TIMES (Apr. 27, 2020) ................................................. 3

John P. Burke, *Administration of the White House*, Miller Ctr. of Pub. Affairs, Univ. of Va., https://tinyurl.com/ydy5cq52 ....................................................................... 4

Julie Bosman & Mitch Smith, *Coronavirus Cases Spike Across Sun Belt as Economy Lurches into Motion*, N.Y. TIMES (June 14, 2020) ................................................. 8

Lisa Shumaker, *U.S. Records 2,600 New Coronavirus Cases Every Hour as Total Surpasses 4 Million*, N.Y. TIMES (July 23, 2020) ..................................................................... 8

Morgan Gstalter, *DeSantis Sued for Not Having ASL Interpreter at Coronavirus Briefings*, THE HILL (July 14, 2020) .......................................................................................... 8

*Remarks by President Trump in Press Briefing*, July 21, 2020, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-press-briefing-072120 ............................................................................................................ 5

*Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing*, Apr. 16, 2020, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-27/ ............................ 4

*Remarks*, THE WHITE HOUSE, https://www.whitehouse.gov/remarks/ ............................................ 4

U.S. Dep't of Health and Human Services, *White House Coronavirus Task Force Press Briefing: June 26, 2020*, YOUTUBE (June 26, 2020), https://www.youtube.com/watch?v=FxEOxuZYwc0 ................................................................ 5

*US Coronavirus Cases, Hospitalizations Rise, Crisis May Worsen*, AL JAZEERA (July 22, 2020), https://www.aljazeera.com/news/2020/07/200722170516674.html .......................................... 8

## INTRODUCTION

This is an action to ensure that hundreds of thousands of deaf and hard of hearing ("DHH") Americans have access to critical, potentially life-saving information conveyed by our nation's political and public health leaders during the COVID-19 pandemic.  All 50 states' governors have provided in-frame American Sign Language ("ASL") interpretation during public briefings regarding the pandemic, and all but a small handful continue to do so consistently.  So have many mayors of America's largest cities.  Leaders from around the world have also provided sign language interpretation for public briefings during the pandemic.  This is done in recognition of the importance of meaningful access to up-to-date information regarding the crisis for DHH people.

President Trump, however, does not.  He now stands alone in holding televised briefings regarding the COVID-19 pandemic without ever having provided any ASL interpretation.  This means that not only are DHH Americans being denied the opportunity to understand any communication from the President of the United States during this critical time, they are also being denied the opportunity to access information, analysis, and updates from Dr. Anthony Fauci and Dr. Deborah Birx—two renowned public health experts.

Various organizations and entities, including the National Association for the Deaf ("NAD"), have requested that the White House provide ASL interpretation during its COVID-19 related briefings.  Additionally, 34 United States Senators have requested the same.  The White House has ignored these requests and continues to conduct public briefings without any ASL interpretation.

The White House's failure to provide ASL interpreters during COVID-19 related briefings, including press briefings, is against the law.  Federal law unequivocally prohibits

discrimination against individuals with disabilities, which includes failing to provide meaningful access to public benefits, programs, or services.  As the U.S. District Court for the Southern District of New York recently held, the Rehabilitation Act unequivocally requires government officials to provide in-frame ASL interpreters during public briefings regarding the COVID-19 pandemic.  *See Martinez v. Cuomo*, No. 20-CV-3338, 2020 WL 2393285, at *5–7 (S.D.N.Y. May 12, 2020) (granting preliminary injunction on behalf of individual deaf New Yorkers and ordering Gov. Cuomo to "immediately implement in-frame ASL interpretation during his daily press briefings").

Plaintiffs' motion for a preliminary injunction is narrow and precise.  Plaintiffs seek preliminary relief on only two counts—violation of the Rehabilitation Act and mandamus relief—with the second being in alternative to the first.  The Court should grant the motion for preliminary injunction for three reasons:

*First*, Plaintiffs are likely to succeed on the merits of their claims.  As the *Martinez* court held, the Rehabilitation Act requires in-frame ASL interpreters to ensure meaningful access to the information conveyed in public briefings regarding the COVID-19 pandemic.  *Id.* at *5-6. The Rehabilitation Act applies to the EOP , White House Office, and Office of the Vice President.  *See* 29 U.S.C. § 794(a); 3 C.F.R. Part 102.  Thus, Plaintiffs are likely to succeed on their claim that these agencies have violated the Rehabilitation Act or, in the alternative, that they are entitled to relief through a writ of mandamus.

*Second*, Plaintiffs are likely to suffer irreparable harm absent a preliminary injunction. Plaintiffs seek vital and continually changing information regarding their health and safety, as well as the federal government's response to the pandemic.  As the *Martinez* court recently held, without an ASL interpreter in public briefings, deaf citizens would be "denied timely access to

this critical information, leaving them less able to comply with current orders and advice, less able to prepare for the future, and more anxious about current conditions and the future." *Martinez*, 2020 WL 2393285, at *6.

*Third*, the balance of hardships and public interest decisively favor a preliminary injunction. There would be no hardship on Defendants to provide ASL interpretation during White House briefings, just as all 50 states' governors have provided ASL interpretation for at least certain of their briefings, and just as other federal agencies (like FEMA) have provided for public health briefings in the past. "By contrast, Plaintiffs . . . . experience hardship on a daily basis as a result of their inability to access [White House] briefings." *Id.* Finally, it is manifestly in the public's interest that *all* members of the American public—including the deaf community—have access to up-to-date information from the White House.

## BACKGROUND

For the past five months, the COVID-19 pandemic has devastated the United States. By late July, more than four and a half million cases had been reported nationwide. More than 150,000 Americans have died from COVID-19, the highest death toll of any nation. Businesses have closed, schools have closed, and social distancing requirements have been instituted. In the face of such an unprecedented crisis, Americans have looked to the White House for leadership and guidance.

## A.    THE WHITE HOUSE'S COVID-19 BRIEFINGS

Beginning in March 2020, the White House began holding regular, televised briefings regarding the COVID-19 outbreak.[1] To date, the White House has conducted more than 50

---

[1]    *See* Jeremy W. Peters, Elaina Plott & Maggie Haberman, *260,000 Words, Full of Self-Praise From Trump on the Virus*, N.Y. TIMES (Apr. 27, 2020),

televised COVID-19 briefings.  The White House Office, and in particular the Press Secretary, is responsible for the public communications of the White House, including the White House's COVID-19 related public briefings.  *See* John P. Burke, *Administration of the White House*, Miller Ctr. of Pub. Affairs, Univ. of Va., (Nov. 27, 2010), https://tinyurl.com/ydy5cq52.  These briefings have addressed critical issues regarding the health crisis, including information regarding the number of confirmed COVID-19 cases, the availability of testing, information about social distancing and other personal safety measures, the coordination of local, state, and federal emergency response systems, and other information about how Americans can stay safe and help limit the spread of the virus.[2]  The briefings have also at times featured government officials from the White House Coronavirus Task Force, including public health experts Dr. Anthony Fauci, the director of the National Institute of Allergy and Disease, and Dr. Deborah Birx, the coordinator of the United States Government Activities to Combat HIV/AIDS.[3]

For example, on June 26, 2020, the White House Coronavirus Task Force held a televised briefing in response to the recent increase in coronavirus cases across the United States.  During the briefing, the Task Force members delivered important information to the American public. After Dr. Birx "unpack[ed] the specific outbreaks in Texas, Florida, Arizona, and California," Vice President Pence spoke, "about what every American can do to play their part in reducing

---

https://www.nytimes.com/interactive/2020/04/26/us/politics/trump-coronavirus-briefings-analyzed.html; *Remarks*, THE WHITE HOUSE, https://www.whitehouse.gov/remarks/.

[2]   *See, e.g.*, *Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing*, Apr. 16, 2020, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-27/.

[3]   *Id.*

the spread and the impacts of the coronavirus pandemic."[4]  In addition, Dr. Fauci implored

young Americans to recognize that they are "part of a process" and have a "societal

responsibility" to comply with social distancing requirements, in light of the alarming number of

growing cases.[5]  But hundreds of thousands of DHH Americans were unable to receive this

important information due to the lack of ASL interpreters.

On July 20, 2020, President Trump announced plans to revive his administration's

COVID-19 briefings.  Since then, the President has given regular briefings at the White House,

providing updates on COVID-19 economic relief packages, vaccine development, and outbreaks

across the country.[6]  On several occasions he has asked Americans to wear masks and socially

distance.[7]  Although health experts have not been present at these latest briefings, President

Trump has stated that he is relaying information from both Dr. Birx and Dr. Fauci to the public.[8]

**B.**      **Deaf Americans' Inability to Access the White House's COVID-19 Briefings**

Unfortunately, the White House's COVID-19 briefings are not accessible to hundreds of

thousands of DHH Americans.  The NAD has received numerous complaints from DHH citizens

who are unable to understand President Trumps' televised briefings due to the lack of in frame

---

[4]      U.S. Dep't of Health and Human Services, *White House Coronavirus Task Force Press Briefing: June 26, 2020*, YOUTUBE (June 26, 2020), https://www.youtube.com/watch?v=FxEOxuZYwc0.

[5]      *Id*.

[6]      *See, e.g.*, *Remarks by President Trump in Press Briefing*, July 21, 2020, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-press-briefing-072120.

[7]      *Id*.

[8]      *Id*.

televised American Sign Language (ASL) interpretation.[9]  *See* Rosenblum Decl. ¶ 2.  For many

such persons, English is, at best, a second language.  *Id.* ¶ 3.  Indeed, many DHH persons know

virtually no English.  *Id.*.

Most DHH Americans who use ASL require qualified ASL interpreters to communicate

with hearing persons who can only communicate in a spoken language such as English.  *Id.* ¶ 5.

ASL is a complete and complex language distinct from English, with its own vocabulary and

rules for grammar and syntax—it is not simply English in hand signals.  *Id.*.  ASL has no written

component.  *Id.*.  For several reasons, including early language deprivation, many deaf people

have a very limited ability to read and write in English.  *Id.*.

Written English is not an effective means of communication for the many deaf

individuals who have limited English capabilities, particularly for complex and important topics

such as COVID-19 and related issues of public health.  *Id.* ¶ 6.  Therefore, even when closed-

captioning is provided, those DHH individuals cannot effectively receive the communications

being given at White House briefings.  *Id.*  Furthermore, the closed captioning for live television

broadcasts frequently contains errors and omissions that make it difficult or impossible for DHH

individuals to understand the information being provided in the briefings, particularly if they are

not fluent in English.  *Id.* ¶ 7.  Tone is also often lost in written captions.  *Id.*  By contrast, an

interpreter is able to convey tone and context of a message through facial expressions, sign

choice, and demeanor.  *Id.*.

---

[9]   Our request for "in frame" ASL means simultaneous sign language interpreting where the
sign language interpreter is visible on the screen beside the President, Vice President, or other
speaker.  This may be accomplished by placing the interpreter physically near the speaker, or by
superimposing a live video feed of the interpreter into a frame that appears alongside the speaker,
with the frame sized appropriately to allow DHH viewers to see and understand the
interpretation.  Under either approach, the in frame, on screen interpreter would be visible on
televised broadcast and on streamed mobile devices.

In response to the White House's failures, elected officials, advocacy groups, and even other federal agencies have implored the White House to provide ASL interpretation for all COVID-19 related briefings.  For example:

- On March 12, 2020, 34 U.S. Senators wrote to Vice President Mike Pence, copying Dr. Birx, urging "the President and his Cabinet officials [to] be models of accessibility by *having American Sign Language (ASL) interpreters at every news conference about COVID-19*," and noting that it "guarantees that members of the deaf and hard of hearing community are able to receive information in real time."  *See* Ex. A (emphasis added). On information and belief, the White House did not respond to this letter.

- On March 18, 2020, the National Council on Disability—an "independent federal agency charged with providing advice and recommendations regarding disability policy *to the President*, Congress, and other federal agencies" (Ex. B (emphasis added))—wrote to the White House, requesting that it provide in frame ASL interpretation for all COVID-19 briefings and citing the ADA and RA, *id*.; Rosenblum Decl.. ¶ 9.  That same day, the NAD sent a similar request to President Trump and the White House.  Rosenblum Decl. ¶ 10 & Ex. C.  The White House did not respond to either of these letters.  Rosenblum Decl. ¶¶ 9-10.

- On March 27, 2020, the Linguistic Society of America (LSA)—an organization founded in 1924 to advance the scientific study of language[10]—sent a letter to the White House Press Staff, requesting that all White House briefings addressing COVID-19 include an ASL interpreter who is visible to any viewer.  *See* Ex. D.  The LSA explained that "solely relying on closed-captioning is not an option for all ASL users, and that a certified sign language interpreter (who must remain visible during the entirety of each briefing) is necessary. . . . This is not only the right thing to do but is also required by federal law, pursuant to the Americans with Disabilities Act and the Rehabilitation Act of 1973."  *Id*.

- On April 21, 2020, Senators Sherrod Brown and Robert P. Casey, Jr., as well as Congresswoman Donna Shalala, wrote to Vice President Pence, copying Dr. Birx, as a follow up to the Senators' March 12 letter.  *See* Ex. E.  These elected officials again "request[ed] that the White House Coronavirus Task Force use qualified, fully-visible American Sign Language (ASL) interpreters during public briefings on the coronavirus." *Id*.  On information and belief, the White House did not respond to this letter either.

These are not extraordinary requests.  Governors of all 50 states—along with mayors of America's largest cities and leaders from around the world—have provided sign language

---

[10]   *See* LINGUISTIC SOCIETY OF AMERICA, https://www.linguisticsociety.org/about.

interpretation of their COVID-19 briefings, and all but a small handful continue to do so consistently.  *See* Rosenblum Decl. ¶ 13; *Martinez*, 2020 WL 2393285, at *6 (S.D.N.Y. May 12, 2020).[11]  In the past, U.S. federal agencies, including the Federal Emergency Management Against (FEMA) before and in the aftermath of Hurricanes Irma and Harvey, have also used onscreen ASL interpreters during public briefings.[12]  As a result, deaf Americans who rely on ASL remain unable to access the White House's briefings.  Rosenblum Decl. ¶ 14.

While the number of COVID-19 cases are currently declining in some of the early hardest hit states such as New York and New Jersey, 32 states reported record increases in COVID-19 cases in July.[13]  On July 23, 2020, the number of COVID-19 cases nationwide surged past four million.[14]  All estimates show that the virus will continue to affect the country throughout the remainder of 2020, and possibly beyond.  Thus, it remains as important as ever that all Americans have access to timely information from the White House.

**C.    Plaintiffs' Inability to Access the White House's COVID-19 Briefings**

Plaintiffs in this action consist of the National Association of the Deaf and several individual deaf persons.

---

[11]   To be sure, a few state's governors have been inconsistent in their provision of ASL interpretation during COVID-19 briefings, which has become the subject of further litigation. *See* Morgan Gstalter, *DeSantis Sued for Not Having ASL Interpreter at Coronavirus Briefings*, THE HILL (July 14, 2020), https://thehill.com/homenews/state-watch/507252-desantis-sued-for-not-having-asl-interpreter-at-coronavirus-briefings.

[12]   *See* Julie Bosman & Mitch Smith, *Coronavirus Cases Spike Across Sun Belt as Economy Lurches into Motion*, N.Y. TIMES (June 14, 2020), https://www.nytimes.com/2020/06/14/us/coronavirus-united-states.html.

[13]   *See US Coronavirus Cases, Hospitalizations Rise, Crisis May Worsen*, AL JAZEERA (July 22, 2020), https://www.aljazeera.com/news/2020/07/200722170516674.html.

[14]   *See* Lisa Shumaker*, U.S. Records 2,600 New Coronavirus Cases Every Hour as Total Surpasses 4 Million*, N.Y. TIMES (July 23, 2020), https://www.nytimes.com/reuters/2020/07/23/us/23reuters-health-coronavirus-usa-cases.html.

The NAD is the nation's premier civil rights organization of, by, and for deaf and hard of hearing individuals in the United States.  Established in 1880 by deaf and hard of hearing leaders, the NAD is dedicated to its mission of preserving, protecting, and promoting the civil, human, and linguistic rights for 48 million deaf and hard of hearing people in this country.  The NAD has associational standing to bring this suit on behalf of its DHH members because (i) the NAD's members have standing to sue in their own right, (ii) advocating on behalf of its members on this issue is germane to the NAD's mission of advocating for its members' civil, human, and linguistic right, and (iii) none of the NAD's members is required to participate in this action because the NAD is seeking declaratory and injunctive relief and not an individualized remedy for its members.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Individual plaintiffs Carlton Strail, Graham Forsey, Debra Fleetwood, John Rivera, Jr., and Corey Axelrod are deaf individuals who are fluent in ASL, which is their primary and preferred language.  *See* Strail Decl. ¶ 2; Forsey Decl. ¶ 2; Fleetwood Decl. ¶ 2; Rivera Decl. ¶ 2, Axelrod Decl. ¶ 2.  Several of these individual plaintiffs have difficulty understanding rapid and unreliable live captioning on television, especially when the content is complex, such as when there is information about a health pandemic.  *See*  Strail Decl. ¶ 3; Fleetwood Decl. ¶ 3; Rivera Decl. ¶ 3.  All of the individuals watched the White House Coronavirus briefings during March and April 2020, and saw the briefings again in July 2020, but could not understand the briefings because there was no ASL interpreter.  *See* Strail Decl. ¶ 4; Forsey Decl. ¶ 3; Fleetwood Decl. ¶ 4; Rivera Decl. ¶ 4, Axelrod Decl. ¶ 3.  These plaintiffs want to understand the White House briefings because they want information on how to stay safe during the coronavirus pandemic, as well as how to take care of family, friends, and loved ones.  *See* Strail Decl. ¶ 5; Forsey Decl. ¶

9

5; Fleetwood Decl. ¶ 5; Rivera Decl. ¶ 5, Axelrod Decl. ¶ 5.  They also want information about

other pandemic-related issues, such as the progress in developing a potential vaccine and the

impact of the pandemic on the economy and country as a whole.  *Id.*  Additionally, Plaintiffs

Graham Forsey and Corey Axelrod are Presidents of the District of Columbia Association of the

Deaf and the Illinois Association of the Deaf, respectively, but are unable to answer questions

from members of these associations about the White House briefings because they do not have

access to the information themselves.  *See* Forsey Decl. ¶¶ 1, 5; Axelrod Decl. ¶¶ 1, 5.

## ARGUMENT

To obtain a preliminary injunction, Plaintiffs must show (1) a substantial likelihood of

success on the merits; (2) a substantial threat that they will suffer irreparable injury if the

injunction is not granted; (3) that the threatened irreparable injury outweighs the threatened harm

that the injunction would cause Defendants and third parties; and (4) that granting the

preliminary injunction would be in the public interest.  *See Aamer v. Obama*, 742 F.3d 1023,

1038 (D.C. Cir. 2014).  "The District of Columbia Circuit has applied a 'sliding-scale approach'

in evaluating the preliminary injunction factors."[15]  *Davis v. Billington*, 76 F. Supp. 3d 59, 63

(D.D.C. 2014) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011)).  Under this

analysis, "if the movant makes an unusually strong showing on one of the factors, then it does

not necessarily have to make as strong a showing on another factor."  *Id.* (alterations omitted)

(quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)).  "For

example, if the movant makes a very strong showing of irreparable harm and there is no

---

[15]   Following the Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*, 555
U.S. 7 (2008), some members of the D.C. Circuit have questioned the continued viability of the
sliding-scale approach.  *See Davis*, 76 F. Supp. 3d at 63 n.5.  But because the Circuit "has had no
occasion to decide this question," the sliding-scale approach "remains the law of this Circuit."
*Id.* (concluding that the court "must employ the sliding-scale analysis").

substantial harm to the non-movant, then a correspondingly lower standard can be applied for

likelihood of success." *Id.* at 63–64 (quoting *Davis*, 571 F.3d at 1291–92). Here, all four factors

decisively favor a preliminary injunction.

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.   Plaintiffs Are Likely to Succeed on Their Rehabilitation Act Claim

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), makes it unlawful for federal

agencies, including the EOP, White House Office, and Office of the Vice President, to

discriminate on the basis of disability in their programs or activities. Section 504 states that:

> No otherwise qualified individual with a disability in the United States . . . shall,
> solely by reason of his or her disability, be excluded from the participation in, be
> denied the benefits of, or be subjected to discrimination under any . . . program or
> activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a). The purpose of Section 504 "is to assure that handicapped individuals

receive 'evenhanded treatment' in relation to nonhandicapped individuals." *Traynor v. Turnage*,

485 U.S. 535, 548 (1988); *see also Am. Council of Blind v. Paulson*, 463 F. Supp. 2d 51, 59

(D.D.C. 2006) (stated purpose of the Rehabilitation Act is "to empower individuals with

disabilities to maximize employment, economic self-sufficiency, independence, and inclusion

and integration into society, through . . . the guarantee of equal opportunity.") (quoting 29 U.S.C.

§ 701(b)(1)). Section 504 thus requires that persons be "provided with meaningful access" to the

benefit at issue through reasonable accommodation. *Alexander v. Choate*, 469 U.S. 287, 301

(1985).

The EOP's regulations implementing the Rehabilitation Act provide that agencies within

the EOP—including the White House Office and Office of the Vice President—"shall take

appropriate steps to ensure effective communication with . . . members of the public." 3 C.F.R.

§ 102.160(a). The agencies "shall furnish appropriate auxiliary aids where necessary to afford a

[handicapped person] an equal opportunity to participate in, and enjoy the benefits of, a program

or activity conducted by the agency [*i.e.*, the White House Office]."  3 C.F.R. § 102.160(a)(1);

*see also Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 100 (D.D.C. 2014) (plaintiff stated a

claim under Rehabilitation Act for failing to provide ASL interpreters or other essential auxiliary

aids required for effective communication).  These regulations additionally mandate that "[i]n

determining what type of auxiliary aid is necessary, the agency shall give primary consideration

to the requests of the [handicapped person]."  3 C.F.R. § 102.160(a)(1)(i).  Auxiliary aids

include, but are not limited to, qualified interpreters for deaf persons.  3 C.F.R. § 102.103.

To prove a violation of section 504, plaintiffs must show that "[1] they are disabled

within the meaning of the Rehabilitation Act [and] are otherwise qualified, [2] they were

excluded from, denied the benefit of, or subject to discrimination under a program or activity,

and [3] the program or activity is carried out by a federal executive agency or with federal

funds."  *Am. Council of Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008).  Here, Plaintiffs

have demonstrated each of these elements.

*First*, because Plaintiffs are deaf, they are individuals with disabilities.  *See* 29 U.S.C.

§ 705(9).  Plaintiffs are also qualified individuals with disabilities under EOP regulations, which

define the term qualified individual with a disability as an individual with a disability who

"meets the essential eligibility requirements for participation in, or receipt of benefits from, that

program or activity."  3 C.F.R. § 102.103.  NAD's members and the Individual Plaintiffs are

individuals with disabilities who, with the reasonable accommodation of an interpreter, would be

able to equally participate in and benefit from White House public briefings.  *See Martinez*, 2020

WL 2393285, at *3 (noting that there was "no dispute" that deaf plaintiffs were "qualified

individuals with a disability"); *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 257 n.4, 267

(D.D.C. 2015) (no dispute that deaf inmate requesting ASL interpreter was qualified individual with a disability under Rehabilitation Act).

*Second*, Defendants' failure to provide live ASL interpreters during COVID-19 briefings has excluded Plaintiffs from, denied Plaintiffs the benefit of, and subjected Plaintiffs to discrimination under a program or activity conducted by the EOP and agencies within the EOP. Plaintiffs require an ASL interpreter in order to effectively understand and participate in public White House briefings because they are deaf.  Without this reasonable accommodation, Plaintiffs are not receiving effective communication, and therefore cannot access the briefings because they cannot understand the critical information covered.  As noted, ASL is the primary language of many of the NAD's members and the Individual Plaintiffs.  Rosenblum Decl. ¶ 4.  The Individual Plaintiffs rely on ASL as their primary language to understand fast-paced information that is complex and critical for staying safe and healthy, as opposed to error-prone captioning in English.  *Id.*.  Plaintiffs cannot effectively use alternative means of receiving information such as closed captioning.

Based on these same facts, the *Martinez* court concluded that plaintiffs had established that they "cannot access Governor Cuomo's briefings without an in-frame ASL interpreter and have therefore demonstrated a likelihood of success on the merits."  2020 WL 2393285, at *6. Although Governor Cuomo argued that existing accommodations, such as closed captioning, ensured meaningful access, the court "disagree[d]," noting that such accommodations, "while perhaps accommodating deaf New Yorkers who are fully literate in English, do not accommodate Plaintiffs and other similar deaf New Yorker who cannot read English."  *Id.* at *5. "Without in-frame ASL interpretation, Plaintiffs are, 'as a practical matter, unable to access

benefits to which they are legally entitled.'"  *Id.* (alterations omitted) (quoting *Henrietta D. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003)).  The same analysis applies here.

 *Third*, the White House COVID-19 public briefings are programs or activities conducted by the EOP, White House Office, and Office of the Vice President, which are "Executive agencies" under the Rehabilitation Act.  While the Act does not define "Executive agencies," and it appears no Court has addressed this precise issue, there is ample authority demonstrating that these Defendants are "Executive agencies"—including the EOP's *own* regulations.

 The EOP considers itself, as well as the White House Office and Office of the Vice President, to be Executive agencies.  The Rehabilitation Act provides that the "head of each such [Executive] agency shall promulgate such regulations as may be necessary to carry out" the statute.  29 U.S.C. § 794.  And the EOP has issued such regulations and has defined "agency" therein as "the following entities in the Executive Office of the President:  the White House Office, the Office of the Vice President . . . and any committee, board, commission, or similar group established in the Executive Office of the President."  3 C.F.R. § 102.103.  Further, the EOP's regulations state that "a federally conducted program or activity is, in simple terms, anything a Federal agency does."  53 Fed. Reg. 25872, 25873 (July 8, 1988).  Accordingly, the White House's COVID-19 briefings are "programs or activities" under the Rehabilitation Act. *See also Martinez*, 2020 WL 2393285, at *5–6 (applying Rehabilitation Act's prohibition on discrimination in programs and activities to Gov. Cuomo's briefings); *Brooklyn Center for Independence of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 640 (S.D.N.Y. 2013) (noting that there was "no dispute" that New York City's emergency preparedness program, which included city press conferences, was a "program" or "activity" within the meaning of the Rehabilitation Act).

That the EOP, White House Office, and Office of the Vice President are "Executive agencies" under the Rehabilitation Act is also confirmed by a memorandum of the Office of Legal Counsel authored by Ted Olson shortly after the 1978 amendments to the Rehabilitation Act.  That memorandum concludes: "It is clear from the legislative history of the 1978 Amendments [to the Rehabilitation Act] that Congress intended the amended § 504 to have *the broadest possible coverage within the Executive Branch*."  *See* 7 Op. O.L.C. 110, 110, 114 (1983) (emphasis added).  Thus, "the legislative history . . . makes clear that Congress intended § 504 to apply . . . to all 'agencies and instrumentalities' in 'the Executive Branch' of government."  *Id.* at 114.  "Those 'agencies and instrumentalities' were understood by Congress to include independent regulatory agencies performing functions constitutionally committed to the Executive Branch, as well as entities more closely subject to the President's day-to-day supervisory authority."  *Id.*

### B.  Alternatively, Plaintiffs Are Likely to Succeed on Their Claim for Mandamus

In addition to their claim under the Rehabilitation Act, Plaintiffs also seek relief in the form of a writ of mandamus.  Even if the Rehabilitation Act could not provide Plaintiffs with adequate remedies—it does—Plaintiffs are likely to succeed on their claim for mandamus relief.

District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  A plaintiff establishes mandamus relief where "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  *Fornaro v. James,* 416 F.3d 63, 69 (D.C. Cir. 2005).

Courts have held that mandamus relief is particularly appropriate where a government agency or official has violated a clear statutory command or the agency's own regulations. *See, e.g.*, *In re Aiken Cty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (granting mandamus relief where agency was "defying a law enacted by Congress . . . without any legal basis"); *Greater L.A. Council on Deafness, Inc. v. Baldrige*, 827 F.2d 1353, 1362 (9th Cir. 1987) (holding that mandamus was available to compel Department of Commerce to act based on clear Department regulations implementing Section 504 of the Rehabilitation Act); *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419, Bhd. of Painters & Allied Trades, AFL-CIO v. Brown*, 656 F.2d 564, 568 (10th Cir. 1981) (holding that mandamus relief was appropriate where plaintiffs demonstrated a "complete failure of federal officials to comply with mandatory statutory and regulatory directives"); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 31 (D.D.C. 2010) (holding that plaintiffs could bring claim for alleged violations of clear mandatory duties under the Federal Advisory Committee Act); *United Gov't Sec. Officers of Am., Local 52 v. Chertoff*, 587 F. Supp. 2d 209, 217, 221 (D.D.C. 2008) (holding mandamus relief appropriate where plaintiff relied on "regulations that clearly dictate the actions that must be taken").

Here, for the reasons explained above, Plaintiffs have a "clear right to relief":  the Rehabilitation Act and EOP's own implementing regulations provide Plaintiffs with a clear right not to be discriminated against under any program or activity conducted by any executive agency, which entails a right to meaningful access to information conveyed at the White House's public briefings related to COVID-19.  *See Martinez*, 2020 WL 2393285, at *5-6.  Defendants' "duty to act" is equally clear—the Rehabilitation Act and the EOP's own regulations require that the Defendant agencies "take appropriate steps to ensure effective communication with . . . members of the public," and "furnish appropriate auxiliary aids"—including ASL interpreters—

"where necessary to afford an individual with [disabilities] an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency."  3 C.F.R. § 102.160(a), (a)(1).  To the extent the Court concludes that the Rehabilitation Act does not provide adequate remedies to Plaintiffs, relief would be available under the doctrine of mandamus.  Thus, Plaintiffs are likely to succeed on at least one of their claims seeking an order compelling Defendants to provide ASL interpretation at all briefings related to the COVID-19 pandemic.[16]

## II.   PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS NOT GRANTED

Absent a preliminary injunction requiring ASL interpretation, Plaintiffs are likely to suffer imminent and irreparable harm.  The White House's decision to hold regular emergency public briefings reflects the reality that information regarding the COVID-19 pandemic is constantly evolving, and the President's assessment is that it is important for the public to have ready access to the latest information.  In his briefings, President Trump not only updates the public about the toll COVID-19 has taken and is taking on the nation, but he also shares information regarding plans relative to reopening businesses and returning to school, as well as information about face coverings, social distancing restrictions, and development of vaccines and therapeutics.  The White House's briefings have also, at times, included important information from public health experts such as Dr. Fauci and Dr. Birx.  Given the nature of the pandemic and

---

[16]   Plaintiffs are also likely to succeed on their additional claims—namely, the claim that Defendants' failure to provide ASL interpreters violates the First Amendment, and the claim for nonstatutory review.  *See* Compl. ¶¶ 59-73.  The Court need not reach those issues, however, because at the preliminary injunction stage, Plaintiffs need only show a likelihood of success on the merits of on one of their claims.  *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 21, 35 (D.D.C. 2017) ("Where multiple causes of action are alleged, plaintiff need only show likelihood of success on one claim to justify injunctive relief.").

its lingering effects, it appears likely the White House will continue to give public briefings at least throughout the remainder of 2020.

Plaintiffs need access to this vital and continually changing information, which could have a direct impact on their health and safety.  Plaintiffs not only need information on how to stay safe and keep their family, friends, and loved ones safe during this pandemic, they also need information on related issues, such as the progress in developing a potential vaccine and the impact of the pandemic on the economy and country as a whole.  *See* Strail Decl. ¶ 5; Forsey Decl. ¶ 5; Fleetwood Decl. ¶ 5; Rivera Decl. ¶ 5, Axelrod Decl. ¶ 5.  For Plaintiff Strail, who does not own a computer and gets his news exclusive from television, the need is especially acute. *See* Strail Decl. ¶ 3.  Finally, Plaintiffs Forsey and Axelrod are Presidents of the District of Columbia Association of the Deaf and the Illinois Association of the Deaf, respectively, but are unable to answer questions from members of these associations about the White House briefings because they do not have access to the information themselves.  *See* Forsey Decl. ¶¶ 1, 5; Axelrod Decl. ¶¶ 1, 5..

Thus, Plaintiffs have demonstrated a time sensitive need for this information and a substantial risk of irreparable harm if they are unable to access it immediately.  As the court recognized in *Martinez*, without an in-frame ASL interpreter in COVID-19 briefings, DHH persons are "denied timely access to this critical information, leaving them less able to comply with current orders and advice, less able to prepare for the future, and more anxious about current conditions and the future."  2020 WL 2393285, at *6.

In addition to those concerns, courts in this circuit have repeatedly held that "the non-disclosure of information to which a plaintiff is entitled, under certain circumstances itself constitutes an irreparable harm; specifically, where the information is highly relevant to an

18

ongoing and highly public matter." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 319 (D.D.C.), *aff'd on other grounds*, 878 F.3d 371 (D.C. Cir. 2017).  The federal government's response to COVID-19 is also a daily topic of vigorous national debate.  And, as the D.C. Circuit has recognized, "stale information is of little value."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

### III.   THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF PLAINTIFFS

The balance of hardships also decisively favors a preliminary injunction.  *See Martinez*, 2020 WL 2393285, at *6 ("[T]he Court finds that the balance of hardships tips decidedly in favor of the Plaintiffs.").  Retaining qualified and effective sign language interpreters is relatively inexpensive and administratively feasible.  Rosenblum Decl. ¶ 13; *see also Martinez*, 2020 WL 2393285, at *6 ("Nor is there any evidence that this proposed accommodation would 'fundamentally alter the nature' of Governor Cuomo's press briefings or 'impose an undue financial or administrative burden.'").  There would thus be no hardship on Defendants to provide ASL interpretation during White House public briefings, just as every other governor and many other mayors have done during their briefings.  "By contrast, Plaintiffs have demonstrated that they experience hardship on a daily basis as a result of their inability to access [White House] briefings."  *Id.*  As explained above, Plaintiffs face serious and irreparable harm as the lack of access to critical information during the current public health crisis could be life-threatening.

Finally, the public interest strongly favors a preliminary injunction.  It is in the public's interest that all members of the public have access to up-to-date information from government officials during a public health crisis.  Without access to information through an ASL interpreter, an entire segment of the population will be without the necessary knowledge to act in a way that

furthers the public interest.  *See Martinez*, 2020 WL 2393285, at *6 ("Plaintiffs and members of the deaf community who are similarly situated to Plaintiffs cannot ensure that they act in the public's interest [without being aware of government orders or recommendations] and may unknowingly endanger themselves or others.").  Nor would there be any "disservice to the public by providing Plaintiffs' proposed accommodation."  *Id.*  To the contrary, it is manifestly in the public interest to ensure that *all* Americans, including DHH Americans, have timely and meaningful access to the White House's communications regarding the ongoing COVID-19 pandemic.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and issue a preliminary injunction requiring Defendants to immediately begin providing live televised in-frame ASL interpretations at all public briefings conducted by any Defendant that address issues concerning COVID-19, including all such briefings involving President Trump, Vice President Pence, Press Secretary McEnany, or any members of the White House Coronavirus Task Force.

## REQUEST FOR EXPEDITED TREATMENT

Plaintiffs respectfully request expedited treatment of this motion.  As explained above, absent a preliminary injunction, Plaintiffs will suffer irreparable harm by being denied timely access to critical, potentially life-saving information conveyed by political and public health leaders during the COVID-19 pandemic.  Pursuant to Local Rule 65.1, Plaintiffs request that the Court set a briefing schedule as follows:  Defendants' response to Plaintiff's Motion for Preliminary Injunction shall be due on August 10, 2020, and Plaintiffs' Reply shall be due on August 14, 2020.  Plaintiffs further request that the Court set a hearing on this motion at the Court's earliest convenience after Plaintiffs submit their reply, but in any event no later than August 24, 2020.  *See* Local Rule 65.1(c).

Dated: August 3, 2020

/s/ Ian S. Hoffman
Ian S. Hoffman (D.C. Bar No. 983419)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999
ian.hoffman@arnoldporter.com


/s/ Marc P. Charmatz
Marc P. Charmatz**
NAD Law and Advocacy Center
86 30 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Fax: (301) 587-1791
marc.charmatz@nad.org

*\*\*pro hac vice motion pending*

*Counsel for Plaintiffs*

21